Common Pleas Court of Carroll County.

IN RE APPLICATION OF FULTON, SUPERINTENDENT OF BANKS.

Decided October 30, 1931.

*James E. Kinnison,* for the Attorney General.
*James N. Hengst,* Amicus Curiae.

OGLEVEE, J.

This cause is before the Court for hearing on the application of I. J. Fulton, Superintendent of Banks of the State of Ohio for instructions with reference to the payment of certain trust funds on deposit in the Cummings Trust Company of Carrollton, Ohio, and particularly as to whether or not said trust funds are preferred claims as against the general creditors of the bank. The Superintendent of Banks avers in his application that on May 8, 1931, the date on which The Cummings Trust Company was taken over by him for liquidation there was on deposit in the commercial department of the Bank six thousand two hundred and twenty dollars and seventeen cents ($6,220.17) as shown by the bank books, the same being trust funds belonging to various trusts then under the administration of The Cummings Trust Com-

pany as Trustee, together with thirty-six dollars and forty-six cents ($36.46) plus fifty-two cents (52c) interest in the Savings Department, and also outstanding certificates of deposit in the sum of two thousand seven hundred ninety-four dollars and ten cents ($2,794.10) plus sixty two dollars and fifteen cents ($62.15) interest, payable to various trusts of which The Cummings Trust Company was Trustee; and further averring that he is in doubt as to whether the same as aforesaid should be paid in full as preferred claims, or whether they constitute general claims entitled to participate with other general creditors of said bank, said Superintendent of Banks prays the Court for instructions in the premises.

It is contended by Mr. James N. Hengst, *Amicus Curiae,* who has filed an extensive Brief in the case, that the trust account in the commercial department of The Cummings Trust Company should be allowed as a preferred claim and paid accordingly. A brief has also been submitted by Mr. James E. Kinnison of Canton, on behalf of the Attorney General, in which the question at issue is considered from a non-partisan standpoint rather than of an advocate. The court has also been supplied with copies of numerous briefs filed in the Supreme Court in a suit in mandamus where the same question that we have here was involved. The court has examined all of these briefs with care and attention and appreciates the assistance thus afforded in the determination of the question now before us.

The Cummings Trust Company was organized under Section 710-41 General Code as a trust company, with commercial, savings and trust departments, and was and is authorized by sub-section 156 to receive or hold money or property in trust; or on deposit from executors, administrators and various other parties including corporations and individuals. Section 161 makes the capital stock, the stockholders and the fund deposited with the State Treasurer security for the trust fund, while Sections 164 and 166 provide how trust funds may be invested.

Then comes Section 710-165, the section which we have more particularly under consideration at this time, and which reads as follows:

"No property or securities received or held by any trust company in trust shall be mingled with the investments of the capital stock or other properties belonging to such trust company or be liable for its debts or obligations. Money pending distribution or investment may be treated as a deposit in a trust company, or may be deposited in any other department of the bank, subject in other respects to the provisions of law relating to deposit of trust funds by trustees or others."

The present State Banking Act containing the above section as quoted was passed on April 4, 1919. It was an amendment and re-codification of a similar prior banking act which was passed May 1, 1908. What is now sub-section 165 of the present act, was section 73 of the former act, which reads as follows:

"All money or property held in trust shall constitute a deposit in the trust department, and the accounts and investments thereof shall be kept separate and such investments or loans shall be especially appropriated to the security and payment of all such deposits, and not be subject to any other liabilities of such corporation, and for the purpose of securing the observance of this proviso, such corporation shall have a trust department in which all business pertaining to such trust property shall be kept separate and distinct from its general business."

It will be noted that under the provisions of this statute the trust funds could not be held liable for the general debts or liabilities of the corporation, and that trust property should be kept separate and distinct from the general business of the bank. There was no provision in this act for depositing trust funds in the commercial department of the bank. But when the present banking act was adopted Section 73 of the former act was amended so as to permit trust funds awaiting distribution or pending investment to be deposited in any other department of the bank. Manifestly this change was made in view of the fact that banks doing a trust business frequently had on hands substantial amounts of trust funds awaiting investment or distribution, and that such funds might advantageously be deposited temporarily in the commercial or general banking department. Until the

enactment of this amended statute a trust company had no authority to so deposit trust money. No one would claim that under Section 73 above quoted, money in the trust department could be used to pay general debts of the bank, nor could such a claim be maintained as against trust funds, under the present statute, which had not been deposited in the commercial department. The question for determination therefore is whether or not the Legislature in amending the statute so as to authorize the temporary deposit of trust funds in the commercial department intended that trust funds so deposited should lose their trust character and become a part of the general deposits of the bank and hence liable for the general debts and obligations of the bank. The first provision of the Sub-section 165 prohibits a trust company from mingling its trust funds with the investments of the capital stock or other property belonging to the trust company, and then secondly it authorizes the temporary deposit of trust funds in the commercial department. Was it the intention of the legislature by the addition of the second provision to annul or limit or modify the first provision, which expressly provides that the trust funds shall be liable for the debts or obligations of the corporation?

Upon consideration of the history of this section of the banking act and the evident purpose of the legislature to make the trust funds absolutely safe, and not subject to hazards of the general bank business, and further upon consideration of the cases cited by counsel in their briefs and the weight and force of the reasons stated by counsel in their briefs, and further taking into consideration the language of the statute as formulated by the legislature the court is of the opinion that the trust funds temporarily deposited in the commercial or savings department of the trust company do not lose their trust character but retain the same after as well as before such deposit or transfer, and are therefore entitled to a preference on the distribution of the assets of the trust company as against general creditors. The court is of the opinion that the statute under consideration means the same as if it had been worded as follows:

"No property or securities received or held by any trust company in trust shall be mingled with the investments of the capital stock or other properties belonging to such trust company, except that pending distribution or investment money may be treated as a deposit in the trust department, or may be deposited in any other department of the bank, but in no event shall the trust funds or any part thereof become liable for the general debts or obligations of such trust company."

In this form the statute would have been free from ambiguity and unless this construction is placed upon the statute it is manifestly contradictory on its face.

It should be kept in mind that these funds were not deposited in another bank but were kept in the possession and control of the trustee, and therefore no question of debtor and creditor or principal and agent or bailment could arise. The Cummings Trust Company was the Trustee and whether the funds were deposited in the trust department, the savings department or the commercial department they were at all times in the custody and control of the trustee.

But aside from the statute, under the doctrine of *Smith* v. *Fuller*, 86 O. S. 57, the trustee should be regarded as a preferred creditor, at least to the amount of cash on hand on May 8, 1931, when the Superintendent of Banks took charge of The Cummings Trust Company. The testimony shows that on that date the Bank had cash on hand and in the vault in the sum of $6,070.56, and trust funds on deposit in the commercial department in the sum of $6,316.56, being a difference of $246.00. In the case last cited, Smith and Bauman as trustees of The Imperial Savings Bank, an insolvent concern, deposited $7,594.76 in the East Side Bank Co., taking non-interest bearing certificates of deposit payable to them as trustees, on return of the certificates properly indorsed. Later the East Side Bank failed and made an assignment, with these certificates outstanding. It further appeared that while this trust money was mingled with the general banking funds, and thereby lost its identity, yet the Bank had at all times after this deposit, money in its vaults equal in amount to the trust fund so deposited. It is

further mentioned in the report that the officers of The East Side Bank Co. knew this deposit was trust money, and not the personal money of the depositors.

Under this state of facts, and also taking into consideration that said trustees had no authority or right to make a general deposit of trust funds, in the absence of a court order, the court held that a presumption would be indulged, that the trustees intended to perform and not violate their duty, and that the deposit was a special, not a general, deposit.

In the case at bar there can be no question of want of knowledge, because The Cummings Trust Company, as trustee, represented both sides of the deposit, and was at all times in possession and control of the trust funds on deposit, regardless of the department in which they were placed. If trust funds deposited under the circumstances of the case of *Smith* v. *Fuller,* did not lose their trust character, it is difficult to understand how trust funds deposited in the commercial department of the Trust Co. under Sec. 710-165, could lose their trust character and become a part of the general assets of the Bank. In the light of the decision above referred to, clearly the trust funds should be protected as a preferred claim at least to the extent of the cash in the Bank on May 8, 1931, in the sum of $6,070.56.

For the reasons above stated, and on the authorities referred to, the court is of the opinion that all of the trust funds deposited in the commercial and savings departments of The Cummings Trust Company, are entitled to preference over the general debts and liabilities of the bank, and are not to be held liable for the general debts; that the successor Trustee is a preferred creditor to the full amount of the trust funds so deposited in the commercial and savings departments, and a decree may be drawn accordingly by counsel for the Superintendent of Banks, and after submitting the same to apposing counsel for such additions or corrections as they may desire or suggest, the entry may be submitted to the court for its approval, exceptions being noted for all parties adversely affected by this decision.